Filed 10/29/13  In re Omar Q. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re OMAR Q. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KARINA V.,<br><br>Defendant and Appellant. | B247011<br>(Los Angeles County<br>Super. Ct. No. CK59158) |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Karina V. (Mother) appeals the juvenile court's jurisdictional order finding under Welfare and Institutions Code section 300, subdivision (b), that she failed to protect her four children, currently ages 13, 12, six and four.[1] She also appeals the dispositional order requiring her to participate in parenting classes and individual counseling. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The matter came to the attention of the Department of Children and Family Services (DCFS) on September 13, 2012, when a caller reported that police had been called to the family home on August 31. The caller reported that Ricardo G., the father of the two younger children, had punched Mother in the face, and that Mother had visible bruising and swelling around her eye.[2]

The caseworker located and interviewed Mother on October 4, 2012. Mother reported that Ricardo, whom she described as "jealous" and "possessive," had punched her on the temple following a verbal altercation. The day after the incident, Mother called the family's babysitter, J.B., to pick up the children, and then reported Ricardo's actions to the police.[3] Mother stated that at the time of the incident, the two older children were visiting their father Omar, and that only Ricardo's two children were in the house, asleep in their bedroom. Mother reported that another incidence of domestic violence had occurred in April 2011. On that occasion, Ricardo had hit her face, resulting in a bloody nose and swollen lip. The children were present when this occurred. After that incident, Mother had

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    Omar Q. is the father of the two older children. Neither father is a party to this appeal.

[3]    According to the police report, Ricardo hit Mother two or three times. The physical abuse was preceded by yelling and Mother crying. Afterward, Ricardo took her cell phone and keys and spent the night.

voluntarily attended a domestic violence program. In addition, she and Ricardo had separated, but Mother allowed him to continue to visit the children in her home and to spend the night.[4] Mother said she had had no further contact with Ricardo after the August 2012 incident, and believed it would be better to have no contact with him in the future. The caseworker asked whether she intended to pursue a restraining order, but Mother did not seem inclined to do so.

The four children were observed to be clean and well-dressed and were free from any evidence of abuse. The two older children said Ricardo did not live in the family home and both denied observing any fighting between him and Mother. The six-year old said he lived with Mother, "dad" and his siblings, but on further questioning said his father no longer lived in the home.[5] The family's babysitter, J.B., said that Ricardo did not live in the home but visited almost daily. She further said she had never seen him act inappropriately with Mother or the children. J.B. recalled that on the day of the incident, she and the two younger children were in a bedroom watching television and did not hear anything. The first she knew of the incident was when Mother came into the bedroom and told J.B. to take the children to her house.

---

[4] DCFS investigated the 2011 incident and deemed it substantiated, but no petition was filed. The family had additional history with DCFS. In February 2005, Omar had left his son unattended in a car at night. In May 2005, Mother was arrested after hitting Omar with a wooden hanger and threatening him with a knife in the presence of the older children. These two incidents led to the filing of a section 300 petition. When the petition was sustained, the court also found that there was a history of violent physical altercations involving the couple, and that Omar had struck and pushed Mother, causing her to sustain bruises on her face and arms. The matter was resolved after Mother participated in a parenting class, a domestic violence program and individual counseling, and the children (only the two older children were involved) were released to their parents. In August 2006, a caller reported that Mother was neglecting the children and using drugs, but the investigation was closed as inconclusive.

[5] The youngest child, then three, was unable to provide any information, but was heard to speak the Spanish words for "fight," "blood" and "knife."

3

The children were detained from Ricardo and released to Mother. At the detention hearing, the court confirmed DCFS's decision to detain the children from Ricardo and place them with Mother.

Interviewed prior to the jurisdictional hearing, the children said they had not seen Ricardo since the incident. Mother also stated she had not seen him since the incident, and did not know where he was living. In this interview, she described Ricardo as "aggressive" and said he had been accused of beating and raping a prior girlfriend. She also said he had flattened her tires on another occasion. DCFS uncovered records indicating that Ricardo had been arrested for rape in 2009 and that Omar had been detained in 2002 for inflicting corporal injury on a spouse/cohabitant and in 2005 for child cruelty.

At the January 2013 jurisdictional hearing, the court took judicial notice of the court file relating to the 2005 sustained petition involving domestic violence between Omar and Mother, finding Mother's involvement in prior domestic violence incidents relevant to the current proceeding. Counsel for DCFS, joined by the children's attorney, argued that jurisdiction was warranted by Mother's poor decisionmaking, including allowing Ricardo to frequent the home despite his violent tendencies.

The court found that Mother and Ricardo had a history of engaging in domestic violence in the children's presence and that on August 31, 2012, Ricardo struck Mother's face with his fists inflicting pain, swelling and redness to her eye and forehead. The court further found that Ricardo had hit Mother in 2011, causing her to sustain bruises. The court found jurisdiction over all four children appropriate under section 300, subdivision (b) (failure to protect). The court made note of the severity of the injuries inflicted on Mother by Ricardo depicted in the police photographs entered into evidence. The court observed that Mother had been involved in at least three incidents of domestic violence with two different

4

men and had allowed Ricardo back in the home despite all she had gone through and purportedly learned in the past. The court expressed concern about the effect on the children of domestic violence in the home and the cycle of violence that could ensue.

When the court turned to disposition, Mother's attorney stated she was willing to participate in a domestic violence class, but requested that parenting and individual counseling not be included in her plan due to the burden they would impose. The court continued the placement of the children with Mother. The court ordered that family maintenance services be provided for the family, including a parenting program and individual counseling to address domestic violence, and ordered Mother to complete a parenting program and attend individual counseling geared toward addressing domestic violence for victims and child protection. The court ordered Regional Center referrals for all the children, a speech assessment for the 6 year old, and individual counseling for the other three. Mother appealed.[6]

## DISCUSSION

A. *Jurisdiction*

To assert jurisdiction over a minor, the juvenile court must find that the child falls within one or more of the categories specified in section 300. (*In re Veronica*

---

[6] Respondent contends the appeal is essentially moot because Mother does not challenge the court's findings with respect to Ricardo's actions and "'a jurisdictional finding good against one parent is good against both.'" (Quoting *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Mother's appeal questions whether occasional acts of domestic violence between parents are sufficient to support the assertion of jurisdiction over the couple's children. If substantiated, her challenge would undermine the jurisdictional finding with respect to both parents. Moreover, as Mother points out, the allegations pertaining to Ricardo alone would not support assertion of jurisdiction over the two older children, who are not his.

5

*G*. (2007) 157 Cal.App.4th 179, 185.) DCFS bears the burden of proving by a preponderance of the evidence that the minor comes under the juvenile court's jurisdiction. (*Ibid*.) "On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.] Substantial evidence is evidence that is reasonable, credible, and of solid value." (*Id*. at p. 185.) "A mere 'scintilla' of evidence is not enough. [Citation.]" (*In re B.T.* (2011) 193 Cal.App.4th 685, 691.) Any inferences we draw must be reasonable and logical: "'inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' [Citation.]" (*Id*. at p. 691.)

As applicable here, a true finding under section 300, subdivision (b) requires proof that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left." "The three elements for a section 300, subdivision (b) finding are: '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [child], or a "substantial risk" of such harm or illness.'" (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1395-1396, quoting *In re Rocco M*. (1991) 1 Cal.App.4th 814, 820.) The third element "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . ." (*In re Savannah M*., *supra*, at p. 1396.)

6

Numerous courts have held that "domestic violence in the same household where children are living" represents "neglect" and "failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194; accord, *In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re E.B.* (2010) 184 Cal.App.4th 568, 576; *In re S.O.* (2002) 103 Cal.App.4th 453, 460-461.) "'Both common sense and expert opinion indicate spousal abuse is detrimental to children.'" (*In re E.B.*, *supra*, at p. 576, quoting *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5; accord, *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562.) "'Studies show that violence by one parent against another harms children even if they do not witness it.'" (*In re E.B.*, *supra*, at p. 576, quoting Fields, *The Impact of Spouse Abuse on Children and Its Relevance in Custody and Visitation Decisions in New York State* (1994) 3 Cornell J.L. & Pub. Pol'y 221, 228.) "'First, children of these relationships appear more likely to experience physical harm from both parents than children of relationships without woman abuse. Second, even if they are not physically harmed, children suffer enormously from simply witnessing the violence between their parents . . . . [¶] Third, children of abusive fathers are likely to be physically abused themselves.'" (*In re E.B.*, *supra*, at p. 576, quoting Cahn, *Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions* (1991) 44 Vand. L.Rev. 1041, 1055-1056.)

Here, the court found jurisdiction supported by evidence of multiple instances of domestic violence between Mother and her male partners, at least one of which -- the 2011 incident -- occurred in the children's presence.[7] On the most

---

[7] During the August 2012 incident, the children were in the bedroom, but the court could reasonably have concluded that they could hear the violent quarrel between Mother and Ricardo. Certainly, they must have been aware of the injuries Ricardo inflicted to Mother's face.

recent occasion, Mother was left with a black eye and visible bruising. Previously, Ricardo had inflicted a bloody nose and swollen lip, and Omar had struck her hard enough to cause bruises on her face and arms. Both Ricardo and Omar had been arrested for committing acts of violence on other parties, and Mother herself was found to have threatened Omar with a knife and struck him with a wooden hanger in 2005. These were not occasional and isolated acts of domestic violence, but evidence of a pattern on Mother's part of choosing violent men as domestic partners and engaging in physical confrontations with them. The court could reasonably conclude that these acts subjected the children to risk of injury.

Mother contends there was no evidence that such acts were likely to recur as she had not seen Ricardo since the incident and was adamant about wanting no further contact with him. The evidence indicated that Mother had previously separated from Ricardo after a violent incident, but subsequently allowed him to re-insert himself into her life, visiting every day and regularly spending the night. This was all the proof the court needed to conclude that Mother's promises and good intentions could not be counted on. Moreover, Mother's pattern of becoming involved with violent men might be expected to continue with a new partner even if she permanently separated from Ricardo. The court was entitled to rely on the evidence of Mother's past acts to support that the pattern they reflected would continue into the future. (See *In re E.B.*, *supra*, 184 Cal.App.4th at p. 576 [mother's record of returning to father despite being abused by him supported juvenile court's finding that children were endangered]; see also *In re Y.G.* (2009) 175 Cal.App.4th 109, 116 [juvenile court may "consider a broad class of relevant evidence in deciding whether a child is at substantial risk from a parent's failure or inability to adequately protect or supervise the child"].)

B. *Disposition*

Mother contends the court abused its discretion in ordering her to participate in a parenting program and domestic violence counseling, describing these programs as time consuming and financially burdensome.[8]

The juvenile court enjoys "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) Of course, its orders must be "'reasonable' and 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300'" (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229, quoting § 362, subd. (c)), and "'[t]he reunification plan "'must be appropriate for each family and be based on the unique facts relating to that family.'" [Citation.]'" (*In re Nolan W.*, *supra*, at p. 1229, quoting *In re Christopher H.*, *supra*, at p. 1006.) "The whole point of reunification is the elimination of those conditions which led to the assumption of jurisdiction by the juvenile court." (*In re Rebekah R.* (1994) 27 Cal.App.4th 1638, 1655.)

Here, the court was cognizant of the fact that Mother had participated in a parenting class in 2005, but given the length of time that had intervened and the errors in judgment she had recently displayed, the court could reasonably conclude that a repeat would be productive. With respect to domestic violence counseling

---

[8] Respondent contends this issue has been forfeited by Mother's failure to object to the dispositional order when the court announced it at the January 2013 hearing. The record reflects that when the court turned to disposition, Mother's counsel expressed her position that Mother should not be required to participate in a parenting class or individual counseling. No further objection was required to preserve the issue for appeal. Respondent further contends that Mother "'invited error'" by stating she would be willing to participate in "domestic violence counseling." Mother's counsel stated she would be willing to participate in a "domestic violence class" which, as we understand it, is distinct from the individual counseling the court ordered.

versus the domestic violence class Mother's counsel indicated she was willing to take, Mother had twice before participated in such programs. The court could reasonably conclude that Mother's ongoing failure to free herself from the grasp of violent partners and the cycle of domestic violence represented a deep-seated problem that required the assistance of a qualified therapist in a one-on-one setting. While we are sympathetic to the burden this imposes on Mother, the court's imposition of a reunification plan geared toward eliminating the conditions that led to the assumption of jurisdiction was not an abuse of discretion.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



WILLHITE, Acting P. J.



SUZUKAWA, J.


10